UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

YIMLAH S. SANKOFA                                          CIVIL ACTION

VERSUS                                                     NO. 15-1679-SS

NEWELL NORMAND, et al

## ORDER AND REASONS

Before the undersigned is the motion of the defendants, Jefferson Parish Sheriff's Office, George Kister ("Kister"), William Whittington ("Whittington"), John Wielbelt ("Wielbelt") and Newell Normand ("Normand"), the Sheriff of Jefferson Parish, for summary judgment. For the reasons below, the motion is granted.

## Background

On or about May 19, 2014, there was an incident involving the plaintiff, Yilmah S. Sankofa ("Sankofa"), and Kister, Whittington and Wielbelt (sometimes referred as the "three police officers") in Marrero, Louisiana. On December 29, 2014, Sankofa was found guilty of battery on a police officer (La. R.S. 14:34.2). Rec. doc. 17 (Exhibit 2). On May 18, 2015, Sankofa filed a complaint against the defendants. It alleges three causes of action: 1) the alleged unlawful and excessive beating of Sankofa was done by the three police officers while acting under the color of law and constituted a violation of 42 U.S.C. 1983 and 1988; 2) the Jefferson Parish Sheriff's Office established customs, policies and practices which directly deprived Sankofa of his civil rights and defendants acted in disregard of his constitutional rights; and 3) the Jefferson Parish Sheriff's Office is vicariously liable to Sankofa. Rec. doc. 1.

An answer was filed on behalf of Sheriff Normand and the three police officers. Rec. doc. 6. The District Judge set the matter for a call docket because there was no service on the Jefferson

Parish Sheriff's Office. Rec. doc. 7. On September 24, 2015, the District Judge dismissed the Jefferson Parish Sheriff's Office with prejudice because it is not a suable entity. Rec. doc. 9.

The parties consented to proceed before the assigned Magistrate Judge. Rec. doc. 14. The pretrial conference is set for July 21, 2016. The trial is set for August 1, 2016. Rec. doc. 16.

On April 6, 2016, Jefferson Parish Sheriff's Office, the three police officers and Normand moved for summary judgment. Rec. doc. 17. Sankofa filed an opposition. Rec. doc. 21. Defendants filed a reply. Rec. doc. 25.

The motion for summary judgment is granted as to Jefferson Parish Sheriff's Office for the reasons stated by the District Judge in the minute entry of September 24, 2015. Rec. doc. 9.

The defendants contend that a fair reading of Sankofa's complaint demonstrates that he alleges a violation of the Fourth Amendment arising out his arrest and the alleged use of excessive force. Rec. doc. 17 (Memorandum at 5). Defendants urge that Sankofa is procedurally foreclosed from suing under any theory of false arrest. Id. at 10-11. In his opposition, Sankofa briefs only his excessive force claim. He makes no arguments in support of a false arrest claim. To the extent that Sankofa's complaint alleges a violation of the Fourth Amendment for false arrest, defendants' motion for summary judgment is granted as to that claim.

Defendants contend that there exists no cause action against Normand under federal law in his individual capacity because Sankofa does not plead any facts from which it may be inferred that he participated directly in any of the alleged deprivations of Sankofa's rights. Defendants also contend that there exists no cause of action against Normand under federal law in his official capacity based on vicarious liability or respondeat superior. Sankofa does not respond to either of these arguments. His only response is that under respondeat superior Sheriff Normand is vicariously liable to him on his state law claim. Accordingly, the motion for summary judgment

2

is granted as to defendants' motion to dismiss the federal causes of action against Normand in his individual and official capacities.

The claims remaining for resolution are: (1) Sankofa's Section 1983 claim against the three police officers for excessive use of force; (2) Sankofa's state law claim against the three police officers for excessive use of force; and (3) Sankofa's claim against Sheriff Normand for vicarious liability on the state law claim.

## Summary Judgment

Fed. R. Civ. P. 56 provides in pertinent part that summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189 (1990). To that end, the court must "view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. Wyatt v. Hunt Plywood, 297 F.3d 405, 409 (5th Cir. 2002). Where the record taken as whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Washington v. Allstate Ins. Co., 901 F.2d 1281 (5th Cir. 1990).

Furthermore, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case. Celotex, 106 S.Ct. at 2553; see Lujan, 110 S. Ct. at 3187. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific

facts showing that there is a genuine issue for trial. Celotex, 106 S.Ct. at 2553-54. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001).

This burden is not satisfied with "some metaphysical doubt as to the material facts," Matsushita, 106 S.Ct. at 1356, by "conclusory allegations," Lujan, 110 S. Ct. at 3180, by "unsubstantiated assertions," Hopper v. Frank, 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir.1994). The court resolves factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. See Lujan, 110 S. Ct. at 3188. Summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir.1993). If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted. See Evans v. City of Bishop, 238 F.3d 586, 588-89 (5th Cir. 2000). The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

## Analysis

**1. Section 1983 Claim for Excessive Force.**

In their report, the three police officers state: (1) on May 18, 2014 at about 12:58 p.m. they were patrolling the Mt. Kennedy area in Marrero, a high crime area, in an unmarked vehicle; (2) they observed a vehicle traveling at about 50 mph on Ames Boulevard which is posted at 35 mph; (3) they elected to stop the vehicle by turning on their blue lights and siren; (4) the vehicle stopped

in the parking lot of a store; (5) the police officers exited their vehicle (they were dressed in civilian clothes but had gold badges hanging from their necks); (6) Kister and Whittington approached the driver's side and made contact with Sankofa; (7) Wielbelt approached the passenger side; (8) they observed Sankofa in an extremely agitated state; (9) Kister told Sankofa to step out of his vehicle; (10) Sankofa responded that he was not getting out of the vehicle; (11) Whittington told Sankofa a second time to step out of his vehicle; (12) Sankofa responded that he was not getting out; he did not have to get out; (13) additional commands were issued and after his continual refusal, Kister and Whittington opened the driver's door to escort Sankofa out of the vehicle; (14) Sankofa tried to close the door and struck Whittington in the leg and Kister in the left arm with the door; (15) Wielbelt entered the car through the passenger door and removed the key from the ignition to prevent Sankofa from fleeing; (16) Sankofa swung his right arm with a closed fist in Wielbelt's direction and struck him on his left bicep; (17) Whittington reached in from the driver's side and pulled Sankofa from the vehicle with Kister's assistance while Sankofa continued to pull away; (18) when Sankofa was out of the vehicle he took a fighting stance, he swung his arms wildly and struck Whittington and Kister; (19) they struck Sankofa's head and body; (20) Wielbelt assisted them in placing Sankofa in a prone position; (21) Sankofa placed his left arm under his body and refused to release it to be handcuffed; (22) a fourth police officer, Detective Lee, struck Sankofa until he released his left arm and was handcuffed; (23) after he was handcuffed, medical assistance was provided for a laceration to Sankofa's right eye lid and nose; (24) Whittington was treated for an abrasion; (25) after medical treatment, Sankofa was transported to the Jefferson Parish Correctional Center; and (26) the vehicle was towed because it had no valid proof of insurance. Rec. doc. 17 (Exhibit 1).

In his complaint, Sankofa alleges that: (1) on May 19, 2014, he was involved in a traffic stop at 3400 Block of Ames Blvd.; (2) he pulled his vehicle into the True Discount at the intersection of Ames Boulevard and Mt. Kennedy Drive; (3) per the police report, he was asked to exit his vehicle; (4) the defendant police officers pulled him out of his vehicle and started beating him up without warning, provocation or justification; (5) within minutes more Jefferson Parish Sheriff's Office detectives and officers arrived; and (6) due to the excessive force used by the detectives and officers, he incurred serious, permanent damages and injuries. Rec. doc. 1.

Sankofa submitted an affidavit. He states: (1) after being pulled over for a traffic violation, he was asked for license, registration and insurance which was provided to the police officers; (2) the insurance card was expired; (3) Sankofa explained that he was a school bus driver and he must have insurance or his license will be flagged preventing him from working as a bus driver; (4) the officers refused to run a check for valid insurance and told him to get out of the car; (5) "I questioned why I needed to get out of the car and the officers physically removed me from the car for which I was charged with battery on a police officer and subsequently convicted"; (6) once out of the car, he was attacked by several officers; (7) at no time did he try to defend himself; (8) he only tried to ball up to protect himself; and (9) he has a video which shows that he did not take a fighting stance and he was not swinging wildly.[1]  Rec. doc. 21(Attachment).

On December 29, 2015, Sankofa was tried before a judge and found guilty of a violation of La. R.S. 14:34.2 - battery on a police officer. La. R.S. 14:34.2 includes:

> Battery of a police officer is a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a police officer acting in the performance of his duty.

---

[1] The video was not submitted with Sankofa's opposition to the motion for summary judgment.

Id.  "Battery is the intentional use of force or violence upon the person of another. . . ." La. R.S. 14:33.

Defendants contend that Sankofa's Section 1983 claim against the police officers for excessive force is barred under the doctrine of Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994).

> It is well settled under *Heck* that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that violation arose from the same facts attendant to the charge for which he was convicted, unless he proves that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

Bush v. Strain, 513 F.3d 492, 497 (5th Cir. 2008) (footnote and quotation marks omitted).  Sankofa does not contend that his conviction has been reversed, expunged, declared invalid or called into question.

When a Section 1983 action for damages implicates a conviction, a court must determine whether a ruling for the plaintiff would necessarily imply the invalidity of the conviction or sentence.  If the court determines that it would, the action cannot proceed unless the conviction has been vacated, invalidated, or overturned.  But, if the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed.[2]

> To succeed on an excessive force claim, a plaintiff bears the burden of showing (1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable.

Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001).

---

[2]  Gail Payton v. Newell Normand, et al, CA 13-310 (E.D.La.) (Vance, C.J.) - Rec. doc. 18 at 19, affirmed, Payton v. Normand, 599 Fed. App. 190 (5th Cir. 2015).

> Although the *Heck* principle applies to § 1983 excessive force claims, the determination of whether such claims are barred is analytical and fact-intensive, requiring us to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction.

Bush v. Strain, 513 F.3d at 497 (footnote omitted).

Sankofa contends that success in this suit would not impugn his conviction for battery on a police officer because there is no relation to the battery for which he was convicted and the later attack by several officers as he curled up and begged them to stop. Rec. doc. 21 at 12.

Sankofa's argument conflicts with his complaint in which he alleges that he "was asked to exit his vehicle. Defendants pulled Mr. Sankofa out of his vehicle and started beating him up without warning. . . ." Rec. doc. 1 at 3. Sankofa does not admit that he used intentional force or violence upon a police office. His argument also conflicts with his affidavit. The key parts are paragraphs 5-8.

> 5. The officers refused to run a check for valid insurance and told me to get out of the car.
>
> 6. I questioned why I needed to get out of the car and the officers physically removed me from the car for which I was charged with battery on a police officer and subsequently convicted.
>
> 7. Once I was out of my car, several officers attacked me and began, kicking, punching, and kneeing me while cursing me and talking about teaching me a lesson.
>
> 8. At no time did I try to defend myself, nor did I try to resist. The <u>only actions</u> I took were to ball up to protect myself while asking why they were treating me that way.

Rec. doc. 21 at 1-2 (emphasis added). Sankofa denies using any force at all on a police officer. He states that the only action he took was to ball himself up to protect himself.

8

Sankofa argues that his excessive force claim is temporally and conceptually distinct from his conviction for battery on a police officer. He contends that excessive force was employed <u>after</u> he was removed from the car and he was balled up on the ground to defend himself.

> [A] § 1983 claim would not necessarily imply the invalidity of a resisting arrest conviction, and therefore would not be barred by *Heck,* if the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim. Accordingly, a claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance.

Bush v. Strain, 513 F.3d at 498 (footnote omitted).

In Bush v. Strain, the undisputed facts were: (1) the defendant detective was interviewing a witness when the plaintiff walked up and greeted him; (2) plaintiff overheard the witness comment about plaintiff's sister; (3) plaintiff became enraged and threw a cup of ice water at the witness; (4) defendant detective attempted to arrest plaintiff for simple battery; and (5) when plaintiff was partially handcuffed she pulled her right arm away in an apparent attempt to hit or intimidate the witness. Thereafter the facts were disputed. Defendant detective testified that plaintiff continued to resist arrest while he attempted to cuff the right hand. As they struggled, they both fell on the rear window of a car. In contradiction to the testimony of defendant detective, plaintiff admitted that she pulled away when defendant detective attempted to arrest her. But she stated that she stopped resisting after he grabbed her right hand. She contended that after she ceased all resistance and both hands were cuffed, defendant detective placed his hand behind her neck and head and forced her face into the rear window of car injuring her jaw and breaking two of her teeth. 513 F.3d at 496.

The Fifth Circuit determined that the plaintiff pleaded a claim for excessive force after she was restrained. Id. at 499. It concluded that: (1) because plaintiff produced evidence that the alleged excessive force occurred after she stopped resisting arrest; (2) the fact findings essential to

9

her criminal conviction were not inherently at odds with this claim; and (3) a favorable verdict on her excessive force claim would not undermine her criminal conviction for resisting arrest. Id. at 500.

Sankofa also cites Curran v. Aleshire, 800 F.3d 656 (5th Cir. 2015).[3] Plaintiff, in violation of her school's rules, used her cell phone on school grounds. A teacher saw her use the phone. He told her to give him the phone or go to the disciplinarian's office. She refused. The teacher called a sheriff's deputy and a school resource officer. At this point the stories diverged. Defendant contends that: (1) plaintiff began fighting when he reached for her student photo ID hanging on a lanyard around her neck; (2) she struck him across his head; and (3) although she thrashed around and tried to get away, he handcuffed her. After she was handcuffed, defendant walked her to the disciplinarian's office. Plaintiff claims that while they were walking to the office, defendant slammed her into a wall. Plaintiff contends she did nothing to provoke being slammed into the wall. Defendant alleged that plaintiff attempted to free herself. He placed her against the wall to regain control. She was found guilty of battery of an officer. 800 F.3d at 658. The district court rejected the argument that the claim of excessive force was foreclosed by Heck.

> Aleshire contends that qualified immunity shields him from liability for his first use of force because he could have reasonably believed it necessary to push Curran against the wall in order to bring her under control after she struck him. That may be true under the deferential qualified immunity standard if his pushing her head into the wall was a split-second response to Curran's battery or continued resistance. While the district court accepted that Curran battered Aleshire, it then found a factual dispute as to timing which, viewed in Curran's favor, takes Aleshire's first use of force outside the context of an immediate and inseparable response to the battery.

---

[3] Curran is a Section 1983 action for excessive use of force. The district judge found that Heck did not bar the claim. The defendants' motion for summary judgment was denied because of fact issues. There was an interlocutory appeal. The Fifth Circuit found that factual disputes precluded summary judgment and dismissed the appeal. It declined the defendant's request to review the district court's ruling on the applicability of Heck to the excessive force claim. 800 F.3d at 659, n. 4.

800 F.3d at 660.

Bush v. Strain and Curran are inapplicable to Sankofa's claim for excessive force. First, Sankofa's complaint and affidavit contradict the conviction for battery on police officer. At no time does Sankofa admit to striking a police officer or resisting arrest. Second, the plaintiffs in Bush v. Strain and Curran were handcuffed prior to the alleged use of excessive force. Sankofa contends that the alleged use of excessive force occurred when he was balled up on the ground trying to protect himself. He was not handcuffed at that time. Third, there is no temporal gap between the battery on a police officer for which Sankofa was convicted and the alleged use of excessive force. In Curran, the battery for which the plaintiff was convicted occurred somewhere on the school grounds before she was handcuffed. The alleged excessive use of force occurred in a school hallway as the plaintiff was being walked to the disciplinarian's office. Sankofa's claim for alleged use of excessive force occurred within the context of an immediate and inseparable response to the battery. The factual basis for Sankofa's conviction for battery on a police officer is not temporally and conceptually distinct from his excessive use of force claim. The claim is barred by Heck.

Because Sankofa's claim is barred, there is no need to consider defendants' claim of qualified immunity.

**2. State Law Claim for Excessive Force.**

Sankofa's state law claim fails for essentially the same reasons as his federal claim for excessive use of force. "Louisiana follows the rule from *Heck* and does not allow state law claims to withstand summary judgment if the claims challenge the validity of the underlying criminal conviction." Sheppard v. City of Alexandria, 2012 WL 3961820, at *2 (W.D. La. Sep. 10, 2012).

### 3. State Law Claim Against Sheriff Normand for Vicarious Liability.

Because Sankofa's state law claim against Kister, Whittington and Wielbelt fails, his state law claim against Sheriff Normand for vicarious liability must also fail.

IT IS ORDERED that defendants' motion for summary judgment (Rec. doc. 17) is GRANTED.

New Orleans, Louisiana, this 31st day of May, 2016.

_____
**SALLY SHUSHAN**
**United States Magistrate Judge**